UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FREDERICK WALKER,

                        Petitioner,                **DECISION AND ORDER**
                                             **No. 03-CV-6088(VEB)**

      -vs-

THOMAS POOLE,

                        Respondent.
_____

## INTRODUCTION

Petitioner Frederick Walker ("Walker") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2000 conviction following a jury trial in Monroe County Court on charges of first degree robbery and related offenses. *See* Petition (Dkt. #1). This Court subsequently granted petitioner's motion, filed by retained counsel, to stay the instant habeas corpus proceeding so that petitioner could return to state court to exhaust two claims of ineffective assistance of appellate counsel. *See* Order (Dkt. #39). Because I found that these two claims sufficiently "related back" to the original habeas claims for purposes of Rule 15(c), I directed that Walker be permitted to file an amended petition asserting these two claims, once he had completed the exhaustion proceedings. Respondent was given thirty (30) days from the date that Walker served his amended petition to file an answer in opposition to the amended petition, should he choose to do so.

Walker returned to state court and commenced an action seeking a writ of error *coram nobis* from the Appellate Division of New York State Supreme Court, arguing that his appellate counsel failed to provide effective assistance on his direct appeal. This application was

unsuccessful, as was his application for leave to appeal to the New York Court of Appeals. After completing the exhaustion process, Walker, through retained counsel, returned to federal court on May 4, 2007, filing a document captioned as "Amended Petition." (Dkt. #41). This document is not technically an Amended Petition. Rather, it consists of the attorney's affidavit setting forth the chronology of the exhaustion proceedings (Dkt. #41), with the following attachments: Walker's original Petition (Dkt. #41-2); Walker's *coram nobis* application to the Appellate Division (Dkt. #41-3); the Appellate Division's order denying the *coram nobis* application (Dkt. #41-4); and Walker's letter seeking leave to the New York Court of Appeals (Dkt. #41-5). Based on Walker's attorney's representations, Walker intended to proceed with the claims presented in the attached original Petition (Dkt. #41-2) and those raised in his most recent *coram nobis* application (Dkt. #41-3).

Walker, acting *pro se*, subsequently filed two memoranda of law (Dkt. ##44 & 45). The first memorandum of law set forth an argument that the trial court erred in failing to sever the counts of the indictment that related to separate criminal incidents. *See* Petitioner's Supplemental Memorandum of Law (Dkt. #44). It appears that Walker raised a variant of this claim in his original Petition (Dkt. #1), in the memorandum of law attached to that document; he asserted that appellate counsel was ineffective in failing to argue that the trial court erroneously denied the severance motion. Respondent addressed that claim of ineffective assistance of appellate counsel in its Answer to the original Petition. Based on this Court's directives in its Order granting the stay, Walker's attempt to raise a yet another new claim in his supplemental memorandum of law (Dkt. #44) is improper. Accordingly, the allegations in that document will only be considered to the extent they are relevant to decide his claim of ineffective assistance of appellate counsel,

premised on the failure to argue that the denial of severance was erroneous.

Walker then filed another *pro se* brief, captioned "Memorandum of Law Supplemental Brief" (Dkt. #45), in which he provided further argument regarding his claim (raised as Ground One of the original Petition) that the second show-up procedure violated his due process rights. He does not appear to raise any new claims in this pleading.

Respondent has neither submitted any papers in opposition to Walker's Amended Petition, nor has he requested an extension of the thirty-day period in which to do so.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction here at issue stems from Walker's alleged involvement, along with co-defendant Joseph Lee ("Lee"), in the robbery of and assault of the store owner at Wadi's Delicatessen in the City of Rochester, and the attempted robbery of Henner's Liquor Store, also located in Rochester. Both incidents took place on the night of February 1, 1999. Walker was indicted by a Monroe County grand jury on two counts of first degree robbery, two counts of first degree assault, two counts of fourth degree grand larceny, two counts of attempted second degree robbery, and one count of attempted petit larceny.

The victim of the first robbery had to be taken to the hospital as a result of the injuries suffered during the robbery. He identified Walker in a show-up identification performed at the hospital. Three witnesses to the attempted robbery at Henner's Liquor Store, identified Walker in a show-up identification conducted outside the store later that night, about ten minutes after the first show-up procedure. After a hearing, the trial court denied Walker's motion to suppress the identifications, finding that neither show-up procedure was unduly suggestive.

At Walker's joint trial with co-defendant Lee in Monroe County Court (Sirkin, J.), the prosecutor first called Sarkis, the store owner of Wadi's Delicatessen, who testified that he was alone at about 7:45 p.m. when Lee entered the store. Soon thereafter, Walker entered the store. Brandishing a stick, Walker began demanding money from Sarkis. Sarkis informed the two men that they could take the money in the cash register. When Sarkis attempted to grab for his shotgun, Walker struck him with the stick. According to Sarkis, both Walker and Lee began kicking him and striking him with the stick. The two men eventually left the store, taking with them Sarkis' shotgun but no money. *See* T.219-34.[1] Sarkis triggered the store alarm, and the police arrived fifteen minutes later. *See* T.234-35, 261. They transported Sarkis to St. Mary's Hospital to receive medical treatment for his injuries.

About one-half hour following the incident at Wadi's Delicatessen, two black males, later identified as Walker and Lee, entered Henner's Liquor Store, also located on Chili Avenue. *See* T.266-69, 280, 300-04, 323. Employees Patricia Martin ("Martin") and Anna Kendrick ("Kendricks") testified that they believed that the two were together because they were talking to each other. Although Walker was wearing a red scarf, which partially covered his face, a portion of his face was still visible. *See* T.268-69, 271, 303-04, 323, 334.

Frances Brown ("Brown"), a customer at Henner's, recognized Lee as a family friend; Lee struck up a conversation with her. T.268-70, 332. Martin and Kendricks recalled that Walker remained quiet while Lee was talking to Brown. *See, e.g.*, T.332-33.

A few minutes later, Martin related, Walker "suddenly . . . just pointed a shotgun in [her] face and he said don't move." T.270. When she looked at the gun, she "thought it was a toy

---

[1]        Citations to "T.___" refer to the trial transcript.

-4-

because it was – it was so shiny" and "looked plastic." *Id.* Martin testified, "I threw my hand up. Don't even play even play with me like that and proceeded to walk away." *Id.* Then, however, Walker "started to point the gun at the customers" and "said don't nobody move." *Id.* At that point, Martin slipped into the back of the store and went into the office where she called the police.  *See* T.270, 287, 335. Kendricks described the weapon held by Walker as "a shotgun, very shiny" and stated that she "really thought it was a joke" but realized it was not when Walker "told everyone[,] nobody move." T.305. According to Kendricks, waved the shotgun in the air "[t]oward the customers that were near the front of the counter." T.306. Kendricks said that Walker "just kept telling everybody[,] don't move. It was like, you think I'm jokin' with you. I'm not. Don't nobody move, I said." T.306. *See also* T.288-89, 305, 307, 315-16, 323-24, 360. The witnesses recalled that Lee paid no attention and continued to talk to Brown while Walker was waving the gun around. T.329-330, 335-36, 346-47.

By the time Martin returned to the main store area after getting off the phone with 911, Walker had left. T.272, 283, 337. Kendricks testified that although she had starting walking with Martin to the backroom, she ended up returning to the front of the store for some reason. Walker was still "standing there waving the gun saying, don't nobody move, don't nobody move . . . ." T.307. Kendricks related, Walker "then turns around and he says, you know, if I really wanted to rob this place, I had a perfect opportunity."  *Id.* Walker then "turned around and walked out the door." T.307; *see also* T.327, 337. Kendricks admitted that Walker never demanded any money from the cash register or tried to take any of the liquor. T.324.

At about 8:27 p.m. Officer William Jeroy ("Jeroy") of the Rochester Police Department heard a radio broadcast concerning an attempted robbery at Henner's Liquor Store. The

perpetrator was described as a black male wearing red clothing. Jeroy and his partner soon observed Walker, who matched the description of the suspect, walking in the vicinity of Henner's. T.372-81, 394. When Jeroy approached petitioner, he saw that petitioner was wearing red pants and carrying a long gun. Walker was taken into custody without incident. *See id.*

Walker first was transported to St. Mary's Hospital where Sarkis had been admitted for treatment for his injuries that included a broken arm. However, he did not receive any pain medication before the show-up was conducted. *See* T.465-69, 261. Sarkis was taken just outside of the foyer of the emergency room to view the suspect, whom the police brought out of the patrol car. T.263. Walker was in handcuffs at this point. Sarkis identified Walker as the man "with the stick" but Sarkis was unable to identify him at trial. *See* T.236-39, 261-63. Sarkis later identified the seized gun as his stolen shotgun. T.421, 382.

Ten minutes after Sarkis identified Walker, the police brought Walker back to Henner's Liquor Store to conduct a show-up procedure with Hendricks, Martin and Brown. Martin and Kendricks, the store employees, identified Walker as the man with the gun. T.275, 311. Brown, the woman who had been talking with the co-defendant during the incident, also identified Walker as the man who had the gun during the incident. T.342-43.

Walker testified in his own behalf.[2] He denied ever entering Wadi's Delicatessen, stealing the shotgun, or injuring Sarkis. Walker testified that at around 7:50 p.m., he had gone into a minimarket on a sidestreet off of the street where Wadi's was located. There he saw the "two [black] guys that had jumped [him]" the previous month "at Nick Tahou's [restaurant]." T.498-99, 500-03. Walker testified that when he saw the two black males inside the minimarket,

---

[2]    Walker's co-defendant, Lee, did not testify at trial.

-6-

they had a "look in [their] eyes like . . . they come jump [him] again." T.503. When Walker left

the minimarket, he testified that the two men were following him. He came across a dumpster in

a parking lot and began looking around for a "[s]tick, rock, bottle" with which to "defend

[him]self." T.504. Walker testified that he was "going to approach them, get it over with." T.505.

During his search, Walker testified, he came upon a shotgun–the gun with which he was later

arrested. Then, Walker testified, two unidentified girls at a bus stop told him, "They went

towards the liquor store." T.506. Walker then proceeded to Henner's Liquor Store because he

wanted to confront his two assailants. T.508.  Walker denied that he ever intended to rob anyone

at the liquor store. He also denied that he had been at Wadi's Delicatessen on the night of the

incident. *See* T.512-16. Walker testified that he recognized Lee at the liquor store because Lee

"stayed next door to [him]" at his apartment on West Avenue. T.509.

   The jury returned a verdict convicting Walker as charged in the indictment. T.657-58. On

January 13, 2000, Walker was sentenced as a persistent violent felony offender to 25 years to life

on the first degree robbery and second degree robbery convictions, those sentences to be served

concurrently to each other. S.29-30.[3] He was also sentenced to two concurrent terms of 25 years

to life on the first degree assault convictions, and two to four years on the fourth degree grand

larceny convictions, those sentences to be served concurrently with each other. Finally, Walker

received 15 years to life on his attempted second degree robbery convictions; those sentences are

being served consecutively to the sentences on the first seven counts of the indictment. Thus,

Walker's aggregate sentence is 40 years to life.

   On direct appeal, appellate counsel argued that the trial court erred in denying the

---

[3]   Citations to "S.__" refer to the transcript of the sentencing hearing.

defense motion to suppress the identifications from both show-up procedures because they were unduly suggestive. Appellate counsel also argued that there were no exigent circumstances justifying the second show-up procedure conducted at the liquor store. Walker submitted a *pro se* supplemental appellate brief contending that the evidence supporting his attempted robbery conviction was legally insufficient. In particular, Walker argued, the evidence of intent was lacking.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the judgment of conviction, finding that the two show-up procedures were not unduly suggestive: "The showups occurred in geographic and temporal proximity to the crime scenes. Defendant failed to meet his 'ultimate burden of proving that the [showup] procedure[s were] unduly suggestive.' Furthermore, the second showup related to the attempted robbery of the liquor store while the first showup related to the robbery of the deli, and thus the second showup was not merely cumulative to the first." *People v. Walker*, 292 A.D.2d 791, 791 (App. Div. 4th Dept. 2002) (internal citations omitted; alterations in the original). The Appellate Division summarily rejected Walker's claim regarding the sufficiency of the evidence, finding that "the evidence identifying him as the perpetrator of the first robbery and the evidence of intent with respect to the second robbery is legally sufficient." *Id.* (citation omitted). The New York Court of Appeals denied leave to appeal.

Walker collaterally challenged his conviction by means of a motion presented to the trial court for vacatur pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 and an application for a writ of error *coram nobis* alleging ineffective assistance of appellate counsel filed with the Appellate Division. Both of these applications were denied.

Walker's Petition sets forth four main arguments. Ground one alleges that the second show-up procedure was suggestive because there were "no Exigencies to transport defendant to another alleged Robbery of a liquor store when the police said that the victim had Positively indentified [sic] him as his Robber at the deli store." Pet. at 5, ¶22A (Dkt. #41-2). As his second ground for relief, Walker challenges the suggestiveness of the first show-up procedure involving the deli store owner's identification, arguing that the "police told [the victim, Sarkis] that they had caught his attackers and that they was [sic] bringing them back to be viewed." *Id.*, ¶22B (Dkt. #41-2). Third, Walker argues that "[t]he element of intent was never proven concerning the attempted robbery of the liquor store or its robbery." *Id.* at 6, ¶22C. Fourth, Walker raises a claim of ineffective assistance of appellate counsel, referring to his attached memorandum of law for the specific instances of deficient performance.

For the reasons that follow, Walker's request for a writ of habeas corpus is denied and the petition (Dkt. #1 & Dkt. #41) is dismissed.

## DISCUSSION

### Exhaustion

Under the habeas corpus statute, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement requires a habeas petitioner to present his federal constitutional claims to the highest court of the state. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (citing *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990) (*per curiam*); *see also*

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001); *Daye v. Attorney General*, 696 F.2d 186, 190-91 (2d Cir.1982), *cert. denied*, 464 U.S. 1048 (1984).  The state courts "must be fairly apprised that petitioner is raising a federal constitutional claim and of the factual and legal premises underlying the claim." *Id.*  (citing *Morgan v. Jackson*, 869 F.2d 682, 684 (2d Cir.), *cert. denied*, 493 U.S. 920 (1989); *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*)).

## Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a habeas petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

## Analysis of the Petition

*Ground One: The second identification procedure involving the liquor store employees was improper due to the absence of exigent circumstances justifying the use of a show-up.*

Walker contends that the show-up procedure performed at the liquor store was unduly suggestive and constitutionally impermissible because there were no exigent circumstances justifying a second show-up since he had already been identified by Sarkis as the perpetrator of the robbery at Wadi's Delicatessen. *See* Pet. at 5, ¶22A (Dkt. #41-2). Respondent concedes that this claim was exhausted on Walker's direct appeal, where it was found to be without merit.

In order to determine whether this pretrial show-up identification was admissible, a reviewing court must undertake a two-part inquiry. *See Manson v. Brathwaite*, 432 U.S. 98, 116 (1977); *Neil v. Biggers*, 409 U .S. 188, 198 (1972); *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). The first step involves determining "whether the pretrial identification procedures unduly or unnecessarily suggested that the defendant was the perpetrator." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). "If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility, *see, e.g.*, *Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir.1986); no further inquiry by the court is required, and '[t]he reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury,' *Foster v. California*, 394 U.S. 440, 442 n. 2, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969)." *Raheem*, 257 F.3d at 133. If, however, the court finds the procedures were unnecessarily suggestive, it must then determine whether the identification was nonetheless independently reliable. *Manson*, 432 U.S. at 110-14; *Raheem*, 257 F.3d at 133. In short, identification evidence will be admissible if (a) the identification procedures used were not suggestive or (b) the witness' identification has independent reliability. *Raheem*, 257 F.3d at 133 (citing, *inter alia*, <u>Manson v. Brathwaite</u>, 432 U.S. at 114).

As the Supreme Court has noted, "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall*, 388 U.S. at 302. Such identifications, which typically take place shortly after a crime and sometimes at the crime scene itself, are known as "show-up identifications." A show-up does not "without more" violate due process. *Biggers*, 409 U.S. at 198. Rather, a "violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding

it." *Stovall*, 388 U.S. at 302. In addressing whether a show-up identification is unnecessarily suggestive, courts inquire into the surrounding circumstances to determine whether the improvised identification procedure–inherently suggestive by nature–was, in fact, necessary. *See United States v. Concepcion*, 983 F.2d 369, 377 (2d Cir. 1992). An inquiry into the necessity of a show-up should ideally entail a weighing of its disadvantages (e.g., suggestiveness and risk of tainting a witness' future identifications) against its advantages (e.g., allowing for identification while the mental picture is fresh in witness' mind, allowing a wrongly detained suspect to be quickly released, and allowing for police to quickly resume their search). *See Brisco v. Phillips*, 376 F. Supp.2d 306, 313 (E.D.N.Y. 2005) (citing *United States ex rel. Cummings v. Zelker*, 455 F.2d 714, 716 (2d Cir.1972)); *see also United States v. Bautista*, 23 F.3d 726, 730 (2d Cir.1994) (suggesting that a showup is most appropriate where the police officer has doubts as to whether he has apprehended the correct suspect); *Cannon v. Graham*, No. 06-cv-1175, 2006 WL 3486803, at *5 (S.D.N.Y. Oct. 31, 2006). However, "'[a] prompt showing of a detained suspect at the scene of arrest has a very valid function: to prevent the mistaken arrest of innocent persons.'" *Bautista*, 23 F.3d at 730 (citation to appellate record omitted). The Second Circuit "has instructed law enforcement officials that where an officer has 'or should have doubts whether a detained suspect is in fact the person sought, the officer must make "immediate reasonable efforts to confirm the suspect's identity."'" *Id.* (quoting *United States v. Valez*, 796 F.2d 24, 27 (2d Cir. 1986) (quoting *United States v. Glover*, 725 F.2d 120, 123 (D.C. Cir.), *cert. denied*, 466 U.S. 905 (1984)), *cert. denied*, 479 U.S. 1067 (1987)); *see also United States v. Sanchez*, 422 F.2d 1198, 1200 (2d Cir. 1970) (stating that show-up identifications are useful and that "prompt on-the-scene confrontation" is "consistent with good police work."). In addition,

"quick identification permits the release of a wrongly detained suspect and allows the police to continue the search for the suspect who may still be at large." *Brisco*, 376 F. Supp.2d at 313. For these reasons, among others, courts have "admitted show-ups that are held in close temporal and geographic proximity to the crime." *Id.*; *see also United States v. Butler*, 970 F.2d 1017, 1021 (2d Cir. 1992). New York state courts also have found that show-up identification procedures to be reasonable where they are conducted in geographic and temporal proximity to the crime and not otherwise unduly suggestive. *See People v. Brisco*, 99 N.Y.2d 596, 597 (N.Y. 2003), 597; *People v. Ortiz*, 90 N.Y.2d 533, 537 (N.Y. 1997).

In this case, Walker argues that because he had been identified by the victim of the robbery at Wadi's Deli, there were no exigent circumstances to warrant the police utilizing the show-up identification procedure for the witnesses of the attempted robbery at Henner's Liquor Store. According to Walker, since he had already been placed under arrest based on Sarkis' identification of him as one of the assailants in the deli robbery, there was little danger that innocent citizens were being mistakenly detained or that a perpetrator was still at large. Thus, Walker concludes, there is no reason why, instead, a line-up should not have been conducted.

Walker neglects to mention that Sarkis' identification of Walker as one of the men who robbed and assaulted him at his deli did not give the police probable cause to arrest Walker for the attempted robbery of the liquor store; the two crimes were completely separate, distinct, and unrelated, and involved different witnesses. This was not a situation where it was unnecessary to conduct a further identification procedure after the initial identification–the police still needed confirmation that they had the right suspect with regard to the attempted robbery of the liquor store.

-13-

Even if I were to agree with Walker that exigent circumstances were lacking, I do not find that the second show-up procedure violated his due process rights. In this case, the show-up identification, was in extremely close spatial and temporal proximity to the crime. In fact, it took place just minutes after the crime occurred at the crime scene itself. Although it appears that Walker was handcuffed behind his back, the record contains no indication that the identifying witness actually saw Walker's handcuffs. Even if the handcuffs were visible, under the circumstances, they were incidental to a prompt "on-the-scene identification" and did not "render the pre-trial identification procedure unnecessarily suggestive." *United States v. Bautista*, 23 F.3d 726, 730 (2d Cir.1994), *cert. denied*, 513 U.S. 862 (1994) (holding that the show-up identification by a confidential informant while the suspects were in handcuffs and illuminated by flashlights was not overly suggestive "[b]ecause the on-the-scene identification was necessary to allow the officers to release the innocent"). Finally, Walker has not pointed any words or actions by the police which could have rendered the display "so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *Stovall*, 388 U.S. at 302. In concluding that the identifications following the second show-up procedure were not unnecessarily suggestive and therefore admissible at trial, the state courts did not engage in an unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(l). Therefore, habeas relief is not available on this claim.

*Ground Two: The first show-up procedure involving
the victim of the robbery of the delicatessen was unduly suggestive.*

As his second ground for relief, Walker challenges the legality of the first show-up procedure involving Sarkis, the victim of the robbery at the delicatessen. According to Walker,

"the only way that he was able to identify his attacker and robbers is that the police had told him that they had caught his attackers and that they was [sic] bringing them back to be viewed." Pet. at 5, ¶22B (Dkt. #41-2).

Respondent raises the defense of non-exhaustion because Walker did not complete one full round of the appellate review process with regard to this claim. In particular, respondent argues, the claim was not fairly presented to the New York Court of Appeals, the highest court from which review could be obtained. Turning first to Walker's papers submitted to the intermediate appellate court, as respondent points out, neither appellate counsel nor Walker raised an argument regarding the first show-up in their submissions before the Appellate Division.  However, the Appellate Division apparently considered the issue of whether the first show-up procedure was suggestive based on the arguments raised by trial counsel at the suppression hearing and summarily rejected it, finding that both show-ups were not unduly suggestive.

When appellate counsel sought leave to appeal from the New York Court of Appeals, she enclosed both her appellate brief and Walker's *pro se* supplemental brief before the Appellate Division as well as that court's decision affirming Walker's conviction. In her letter petitioning the New York Court of Appeals for leave to appeal, Walker's appellate counsel specifically discussed *only* the claim (raised in her appellate brief) that there were no exigent circumstances warranting a show-up procedure to be done for the victims of the attempted robbery at the liquor store.

Respondent asserts that Walker did not exhaust his claim that the first show-up was unduly suggestive because appellate counsel only presented in her brief the issue of exigent

circumstances with regard to the second show-up, and Walker did not include it in his *pro se*

supplemental brief. Furthermore, respondent points out, the suggestiveness of the first show-up

was not mentioned at all in the letter seeking leave to appeal to the New York Court of Appeals.

The only forum in which this issue was raised appears to have been before the trial court in the

context of the pre-trial suppression motion.  Respondent argues that although the briefs

submitted to the Appellate Division were included with the leave application, "their mere

inclusion, even to the extent that the briefs may be read to raise an issue with respect to the first

show-up, does not 'fairly present' the petitioner's constitutional claims to the Court of Appeals

for exhaustion purposes." Respondent's Memorandum of Law ("Resp't Mem.") (Dkt. #15) at 9

(citing *Grey*, 933 F.2d at 121).

I agree with respondent. Under similar circumstances, the Second Circuit held in *Grey v.

Hoke*[4] that although a petitioner had constructively exhausted his state remedies for the purposes

of federal habeas review, he had also procedurally defaulted on, those claims he failed to identify

for the New York Court of Appeals. *See Grey v. Hoke*, 933 F.2d at 120-21. Similarly, in *Jordan

v. Lefevre*, 206 F.3d 196 (2d Cir. 2000), the Second Circuit determined that a habeas petitioner,

who had omitted in his leave letter to the New York Court of Appeals claims that were contained

in his briefs to the Appellate Division, procedurally defaulted on those claims. This was because

---

[4] "Petitioner argues that by attaching his Appellate Division brief to his letter application to the Court of Appeals, he presented that court with an opportunity to rule on his sentencing and prosecutorial misconduct claims. He concedes, however, that his letter application requested that the Court of Appeals review only the search and seizure claim. The letter made no mention of the sentencing and prosecutorial misconduct claims. Under these circumstances, we disagree with petitioner's assertion that the Court of Appeals was presented with his sentencing and prosecutorial misconduct claims." *Grey*, 933 F.2d at 120. According to the Second Circuit in *Grey v. Hoke*, "[t]he fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned." *Id.* Where "[t]he only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court," the Second Circuit determined that that "did not fairly apprise the [state appellate] court of the two claims." *Id.* (citations omitted).

he stated in the letter to the Court of Appeals nothing beyond his request for leave to appeal "[f]or all of these reasons and the reasons set forth in his Appellate Division briefs." 206 F.3d at 198-99.

Walker is now barred from making any additional leave applications because the one to which he is statutorily entitled has already been denied by the Court of Appeals. *See* N.Y. COURT RULES § 500.10(a) (only one leave application available); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994), *cert. denied*, 514 U.S. 1054 (1995). Walker is also foreclosed from bringing these claims in the state courts as a collateral attack on his conviction because the claims either were raised or could have been raised on his direct appeal. *See* N.Y. CRIM. PROC. LAW § 440.10(2)(a), (c).

Because Walker no longer has remedies available in state court, his claim must be "deemed" exhausted. *Bossett*, 41 F.3d at 829. However, the mechanism by which the claim was constructively exhausted also creates a state-court procedural default. Thus, habeas review is barred unless Walker can establish cause and prejudice for the default or demonstrate that failing to consider his federal claims will result in a "fundamental miscarriage of justice," *see*, *e.g.*, *Harris v. Reed*, 489 U.S. 255, 262 (1989), which requires a showing of "actual innocence."

Walker has shown neither cause for his default nor prejudice resulting therefrom. Moreover, he cannot demonstrate that dismissal of his petition, without addressing the merits of the defaulted claims, would amount to a "'fundamental miscarriage of justice.'" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir.2006), *cert. denied sub nom. Jimenez v. Graham*, __U.S. ___, 127 S.Ct. 976, 166 L.Ed.2d 740 (2007) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 854, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)). Walker has not attempted to make any such showing, and

indeed I find that on the record before me, he cannot do so. He therefore cannot overcome the procedural default, and habeas review of this claim is precluded.

*Ground Three: The evidence of intent was insufficient*
*to support the conviction of attempted second degree robbery.*

Walker asserts that the prosecution failed to prove the element of intent with regard to "the attempted robbery of the liquor store or its [sic] robbery." Amend. Pet. at 6, ¶22C (Dkt. #). Respondent contends that Walker failed to properly present this claim to the highest New York state court from which review could be obtained because this claim–like the claim regarding the first show-up identification–was not included in the application for leave to appeal to the New York Court of Appeals. Thus, for the reasons discussed above in this opinion under "Ground One," I agree with respondent that while the claim must be deemed exhausted, it is also procedurally defaulted.

Walker has not shown either cause for his default of the insufficiency of the evidence claim or prejudice resulting therefrom. Further, he has not demonstrated that dismissal of the Amended Petition without addressing the merits of the defaulted claim would amount to a "'fundamental miscarriage of justice.'" *Jimenez v. Walker*, 458 F.3d at 149 (2d Cir.2006) (quoting *O'Sullivan v. Boerckel*, 526 U.S. at 854). Because Walker is unable to overcome the procedural default, habeas review of the evidentiary sufficiency claim is unavailable. Accordingly, it is dismissed.

*Ground Four: Appellate counsel provided ineffective assistance.*

As his fourth ground for relief in the Amended Petition, Walker contends that appellate counsel failed to provide effective assistance with regard to his direct appeal in violation of his Sixth Amendment right to counsel. In order to prevail on a claim of ineffective assistance of

counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under the "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)), *cert. denied*, 508 U.S. 912 (1993)). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Mayo,* 13 F.3d at 533-34; *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

Walker indicates that the Memorandum of Law he submitted in support of his application for a writ of error *coram nobis*, and which he attached to his Amended Petition, contains the specific bases of counsel's ineffectiveness. *See* Dkt. #41-3. The first error he assigns to appellate counsel is the failure "to argue ineffective assistance of trial counsel for failing [to] make a motion pursuant to 210.30 of the Criminal Procedure Law for inspection of the grand jury minutes to dismiss or reduce the counts <u>Eight</u> and <u>Nine</u> thereof an highlighting these facts for the court's attention. . . ." Pet'r *Coram Nobis* Mem. at 14-15 (Dkt. #41-3) (emphases in original). The eighth and ninth counts of the indictment charged petitioner with attempted robbery in the second degree in violation of N.Y. Penal Law § 160.10(2)(b). Appellate counsel's second error was that she "failed to bring to the trial courts [sic] attention that the evidence at the grand jury

was insufficient for Courts [sic] <u>Eight</u> and <u>Nine</u> of the indictment when the prosecutor failed to produce competent evidence that the victims at Henners [sic] liquor store perceived that the weapon displayed by the defendant was a <u>firearm</u> . . . ." Pet'r *Coram Nobis* Mem. at 15 (Dkt. #41-3) (citations omitted; emphases in original). The third error by appellate counsel, according to Walker, was the failure "to bring to the courts [sic] attention that the prosecutor committed prosecutorial misconduct when he deliberately failed to bring to the grand jury panel [sic] attention that the delicatessen victim had testified at a previous proceeding [*i.e.*, the suppression hearing] where he failed [to] identify anyone as his attackers . . . ." *Id.* (Dkt. #41-3).

   As an initial matter, I note that any complaint by Walker regarding trial counsel's performance in regard to the grand jury proceed is fatally flawed:  Trial counsel *did* move for inspection and disclosure of the grand jury minutes prior to trial and to dismiss the indictment on the basis that the evidence before the grand jury "was not legally sufficient to establish the commission by the defendants of the offenses charged in the indictment." County Court Opinion, Decision & Order, Resp't Ex. G. The trial court granted the motion to inspect the grand jury minutes and, after reviewing them, "determined that the evidence submitted to the Grand Jury was legally sufficient to establish that the defendants committed the offenses.  The trial court further ruled that competent and admissible evidence was submitted to provide reasonable cause to believe that the defendants committed such offenses." *Id.* (citation omitted), Resp't Ex. G. Indeed, Walker attached this Order to his first *coram nobis* application, *see* Resp't Ex. G, wherein he specifically acknowledged that trial counsel made a motion pursuant to C.P.L. § 210.10–which is exactly what he now contends that trial counsel failed to do. Thus, Walker's claim is factually baseless.

Moreover, Walker's claim is legally baseless as well. As the New York Court of Appeals has explicitly stated, "[w]hen a judgment of conviction has been rendered based upon legally sufficient trial evidence, appellate review of a claim alleging insufficiency of Grand Jury evidence is barred." *People v. Wiggins*, 89 N.Y.2d 872, 874 (N.Y. 1996) ("Defense counsel's failure to timely facilitate defendant's intention to testify before the Grand Jury does not, per se, amount to a denial of effective assistance of counsel under the circumstance of this case[.]") (citing N.Y. CRIM. PROC. LAW § 210.30(6) ("The validity of an order denying any motion made pursuant to this section is not reviewable upon an appeal from an ensuing judgment of conviction based upon legally sufficient trial evidence."); *People v. Huston*, 88 N.Y.2d 400, 411 (N.Y. 1996)). Because an argument regarding trial counsel's alleged deficiencies in regard to the grand jury proceeding most certainly would not have been successful on appeal under the facts of this case, Walker obviously was not prejudiced by appellate counsel's failure to include one. Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a reasonable probability that [his] claim would have been successful . . . .' ' ") (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d at 803). Although there isno need for the Court to determine whether appellate counsel's performance was objectively unreasonable because Walker cannot establish prejudice, *see Strickland v. Washington*, 466 U.S. at 697, I find that appellate counsel quite reasonably decided not to risk diluting the strength of her other arguments by pursuing the meritless claims urged by Walker. *See Sellan v. Kuhlman,* 261 F.3d at 317 ("This process of 'winnowing out weaker arguments on appeal and focusing on' those  more likely to prevail, far from being evidence of incompetence, is the hallmark of

effective appellate advocacy."); *Smith v. Robbins,* 528 U.S. at 288 (Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.") (citing *Jones v. Barnes,* 463 U.S. 745, 750-54 (1983)).

Finally, I turn to the additional claims of ineffective assistance of counsel that Walker raised in the memorandum of law he submitted in support of his original Petition (Dkt. #1). Specific mention of these claims was not made either in retained counsel's Amended Petition (Dkt. #41-2) or in Walker's supplemental memoranda of law filed subsequent to the Amended Petition.  Arguably, then, he does not intend to pursue them. In the interest of finality, however, I will address them briefly, as they are all without merit and quickly disposed of.

Walker cannot prevail on his claims that appellate counsel was ineffective in failing to argue on direct appeal that the first show-up was unduly suggestive, that it came about as a result of his arrest without probable cause, and that the evidence was insufficient. Walker raised them himself in his *pro se* brief, and the Appellate Division considered them on the merits. Therefore, he cannot demonstrate the prejudice prong of *Strickland*, which requires showing that a deficiency of appellate counsel influenced the outcome of the appeal.

Lacking a factual basis is Walker's claim that appellate counsel erroneously failed to argue that the indictment was defective because it was not signed by the foreman of the grand jury. Respondent has submitted a copy of the original indictment, filed with the Monroe County Clerk, which contains the signature of the grand jury foreman.

Next, appellate counsel decided not to challenge the trial court's decision regarding severance of the counts of the indictment regarding the deli robbery from the counts regarding

the attempted robbery of the liquor store. As respondent points out, this claim had little or no chance of success. Because petitioner's possession of the delicatessen owner's shotgun was mutually relevant to both incidents, the charges were properly joinable under C.P.L. § 200.20(2)(b) within the scope of the trial court's discretion. Once the offenses were properly joined, the court lacked statutory authority to sever. *People v. Bongarzone*, 69 N.Y.2d 892, 895 (N.Y. 1987) (citing N.Y. CRIM. PROC. LAW § 200.20(3)). Appellate counsel, given the facts of Walker's case, would not have been able to meet the heavy burden of demonstrating that the trial court's discretion was exercised improvidently. As there is no reasonable likelihood that this claim would have been successful, Walker was not prejudiced by its omission from appellate counsel's brief.

Finally, Walker contends that appellate counsel labored under a conflict of interest since his trial counsel, who was an employee of the same public defender's office, had been relieved from representing Walker at sentencing because Walker was claiming that trial counsel had provided ineffective assistance of counsel with regard to certain prior convictions that formed the basis for his enhanced sentencing of the instant crimes. Thus, Walker contends that the fact that the two attorneys were affiliated with the same office created a conflict of interest precluding appellate counsel from representing him on appeal.

"The right to counsel under the Sixth Amendment entails 'a correlative right to representation that is free from conflicts of interest.'" *United States v. Levy*, 25 F.3d 146, 152 (2d Cir.1994) (quoting *Wood v. Georgia*, 450 U.S. 261, 271 (1981)); *accord Armienti v. United States*, 313 F.3d 807, 811 (2d Cir. 2002). "A defendant will have suffered ineffective assistance of counsel in violation of his Sixth Amendment rights if his attorney has a 'per se' conflict, a

potential conflict of interest that results in prejudice to the defendant, or an actual conflict of interest that adversely affects the attorney's performance." *Armienti*, 313 F.3d at 811 (citing, *inter alia*, *Levy*, 25 F.3d at 152). Walker has not established a "*per se*" conflict of interest; the *per se* rule "applies only when there is an 'actual or constructive denial of the assistance of counsel altogether,'" *Winkler v. Keane*, 7 F.3d 304, 308 (2d Cir. 1993) (quoting *Strickland*, 466 U.S. at 692)). The Second Circuit has held that "such a denial arises in only two limited circumstances: where defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes." *Id.* (citations omitted). Clearly, those circumstances are not present here.

Second, Walker has not established that there was an "actual" or even a "potential" conflict of interest between him and his appellate counsel. "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler v. Keane*, 7 F.3d at 307 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 336 n. 3 (1980)). Walker has not shown that his and his counsel's interests were divergent with regard to his pursuit of his appellate rights. The alleged conflict that Walker had with his former trial counsel (appellate counsel's co-worker) concerned previous convictions which had nothing to do with the instant convictions which appellate counsel was responsible for challenging. Notably, Walker did not contend in his supplemental *pro se* appellate brief or in his *coram nobis* applications that there were errors in his sentencing with regard to the convictions at issue here. Walker cannot establish that he was in any way prejudiced by the fact that his former trial counsel and his current appellate attorney were affiliated with the same public defender's office.

In sum, Walker has established neither that appellate counsel performed deficiently nor

that there was a reasonable possibility of a better outcome had counsel included the omitted issues. Walker thus cannot prevail on his claim of ineffective assistance of appellate counsel. Accordingly, Ground Four of the Amended Petition is dismissed.

## CONCLUSION

For the reasons stated above, Frederick Walker's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition (Dkt. #1) and Amended Petition (Dkt. #41) are dismissed. Because Walker has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:        April 22, 2008
              Rochester, New York.